No. 24-10678

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

MIDAMERICA C2L INCORPORATED,
*Plaintiff/Counter-Defendant/Appellant,*

AND

SECURE ENERGY, INC.,
*Plaintiff/Appellant,*

vs.

SIEMENS ENERGY, INC.,
*Defendant/Counter-Claimant/Appellee.*

———————————

## APPELLEE SIEMENS ENERGY, INC.'S RESPONDING BRIEF

———————————

On Appeal from the United States District Court
For the Middle District of Florida
Case No. 6:17-cv-171-Orl-40LRH

———————————

James C. Martin
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Telephone: 412.288.3131
Facsimile: 412.288.3063

Robert W. Thielhelm Jr.
BAKER & HOSTETLER, LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, FL 32802
Telephone: 407.649.4000
Facsimile: 407.841.0168

Scott D. Baker
Jonah D. Mitchell
Adaline J. Hilgard
Christopher J. Pulido
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: 415.543.8700
Facsimile: 415.391.8269

*Attorneys for Appellee Siemens Energy, Inc.*          July 15, 2024

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Local Rules 26.1-1 through 26.1-5, undersigned counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc. certify that the following trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, or other identifiable legal entities have an interest in the outcome of this case:

1.    BAKER & HOSTETLER, LLP (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

2.    Baker, Scott D. (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

3.    Brasel, Jessica A. (Former Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

4.    Byron, Hon. Paul G. (U.S. District Judge, Middle District of Florida)

5.    Cherba, Michael R. (Former Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

6.    Cooney, John F. (Former Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

7. Daire, James A. (Former Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

8. DANNA MCKITRICK, P.C. (Former Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

9. DECHERT LLP (Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

10. Devereux, Robert L. (Former Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

11. Fisher Rushmer, P.A. (Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

12. GROWER, KETCHAM, EIDE, TELAN & MELTZ, P.A. (Former Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

13. Hilgard, Adaline J. (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

14. Hoffman, Hon. Leslie R. (U.S. Magistrate Judge, Middle District of Florida)

15. Ketcham Jr., Walter A. (Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

16. KNAPP, OHL, & GREEN (Former Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

17. Knapp, William J. (Former Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.) (deceased)

18. Martin, James C. (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

19. Mauck, Stormie (Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.).

20. McGinley, Michael H. (Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

21. MidAmerica C2L Incorporated (Plaintiff/Counter-Defendant/Appellant)

22. Mitchell, Jonah D. (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

23. Nixon, Jeremiah W. (Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.).

24. Overend, William R. (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

25. Pulido, Christopher J. (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

26. Quimby, P. Alexander (Former Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

27. Reagan, Hon. Michael J. (retired U.S. District Judge, Southern District of Illinois)

28. REED SMITH LLP (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

29. Romeo, Justin M. (Former Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

30. Schmitt, Jeffrey R. (Former Counsel for Plaintiff/Counter-

Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.)

31.    Secure Energy, Inc. (Plaintiff/Appellant)

32.    Siemens AG (Owner, with its affiliates, of over 10% of the stock of Siemens Energy AG, which is Parent of Siemens Energy Global GmbH & Co. KG, which is Parent of Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

33.    Siemens Energy AG (Parent of Siemens Energy Global GmbH & Co. KG, which is Parent of Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

34.    Siemens Energy Global GmbH & Co. KG (Parent of Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

35.    Siemens Energy, Inc. (Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

36.    Siemens Power Generation, Inc. (Former Name of Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

37.    Simon, Anthony G. (Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.).

38. Sousa, Paul (Former Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

39. Spaulding, Hon. Karla R. (retired U.S. Magistrate Judge, Middle District of Florida)

40. THE SIMON LAW FIRM, P.C. (Counsel for Plaintiff/Counter-Defendant/Appellant MidAmerica C2L Incorporated and Plaintiff/Appellant Secure Energy, Inc.).

41. Thielhelm Jr., Robert W. (Counsel for Defendant/Counter-Claimant/Appellee Siemens Energy, Inc.)

42. Wilkerson, Hon. Donald G. (former U.S. Magistrate Judge, Southern District of Illinois)

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Local Rules 26.1-1 through 26.1-5, undersigned counsel states as follows:

Siemens Energy, Inc., the named Defendant/Counter-Claimant/Appellee, is a wholly-owned subsidiary of Siemens Energy Global GmbH & Co. KG, which, in turn, is a wholly-owned subsidiary of Siemens Energy AG. Siemens Energy AG is publicly traded in Germany. Siemens AG and its affiliates own over 10% of the stock of Siemens Energy AG.

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary for this appeal. On a prior appeal in this case, this Circuit's three-judge Panel reviewed the same underlying record and affirmed summary judgment in Siemens Energy's favor on all of Secure's claims on grounds appearing as a matter of fact and law from the trial court record. Thereafter, on rehearing, the Panel applied a prudential forfeiture rule announced in *United States v. Campbell*, 26 F.4th 860 (11th Cir. 2022), and found it could not consider the case-dispositive alternative grounds for summary judgment because Siemens Energy had not raised them on appeal as grounds to affirm. The Panel thus reversed its affirmance on Secure's Counts II, IV, V, and VI and remanded those claims, while making clear that Siemens Energy could renew its summary judgment motion on the same grounds the Panel had deemed meritorious.

On remand, the district court granted Siemens Energy's renewed summary judgment motion on those same grounds and on additional grounds as well. The factual record and the applicable law have not changed since this Court previously examined the issues. The district court's summary judgment ruling is fully supported by the record and applicable law, and oral argument is not needed

to clarify any record or legal issues.  This Court can apply the law to the factual record based on the parties' briefing.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................ 1

RESTATEMENT OF THE ISSUES .................................. 2

STATEMENT OF THE CASE ........................................ 3

    A.    Secure And Siemens Energy Enter A Series Of Agreements Involving Gasification Equipment And Technology ................................................................ 3

    B.    Secure's Claims and the District Court Litigation ......................... 7

    C.    Secure's First Appeal and this Court's Decisions ........................ 13

    D.    The District Court's Proceedings on Remand ............................. 17

STANDARDS OF REVIEW .......................................... 18

SUMMARY OF ARGUMENT ........................................ 20

ARGUMENT ............................................................... 22

    A.    The Judgment Should Be Affirmed: The Legal Rulings Are Supported By The Record And Controlling Law ................. 22

        1.    The District Court Properly Granted Summary Judgment on Count II for Breach of Implied Warranty .......................................................... 23

        2.    The District Court Properly Granted Summary Judgment on Secure's Fraud Claims (Counts IV and V) .................................................................. 29

            a.    The Court Properly Ruled Secure's Fraud Claims Are Barred by the Independent Tort Doctrine ...................................................... 29

            b.    Secure's Fraud Claims Also Failed Because Secure Did Not Plead Fraudulent Inducement ...................................................... 34

        c.    Secure's Fraud Claims Were Properly Dismissed Because Secure Did Not Prove the Inadequacy of Legal Remedies or Alleged Damages ........................................................ 37

        d.    Secure's Fraud Claims Were Properly Dismissed Because It Did Not Prove a Duty to Disclose ................................................. 39

    3.    The District Court Properly Granted Summary Judgment on Count VI for Rescission-Failure of Consideration ................................................... 41

  B.    Secure's Assertions of Reversible Error Are Meritless ................ 43

    1.    There Was No Error in Granting Summary Judgment on Secure's Breach of Implied Warranty Claim ................................................................. 43

    2.    There Was No Error in Granting Summary Judgment on Secure's Fraud Claims ................................. 48

        a.    Secure Did Not Plead Fraudulent Inducement; Regardless, the Independent Tort Doctrine Precludes its Fraud Claims. .............. 48

        b.    Secure's Fraud Claims are not "Separate and Distinct" From a Breach of Contract Claim ............. 52

        c.    Secure Failed to Show a Common Law Duty to Disclose ................................................. 52

        d.    Secure Cannot Show Legal Remedies are Inadequate ................................................... 54

    3.    There Was No Error in Granting Summary Judgment on Secure's Rescission-Failure of Consideration Claim ........................................... 55

CONCLUSION ................................................................. 59

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accurate Copy Serv. of Am., Inc. v. Fisk Bldg. Assocs. L.L.C.*,
72 A.D.3d 456 (N.Y. App. Div. 2010) ....................................................24, 44

*Brooks v. Brooks Consultants, Inc.*,
No: 6:22-cv-669-WWB-LHP, 2022 U.S. Dist. LEXIS 202498
(M.D. Fla. Nov. 7, 2022) ...............................................................................30

*Brooks v. Cnty. Comm'n of Jefferson Cnty.*,
446 F.3d 1160 (11th Cir. 2006) .....................................................................19

*Bryant v. Jones*,
575 F.3d 1281 (11th Cir. 2009) .....................................................................57

*Caledonian Bank & Tr. Ltd. v. Fifth Third Bank*,
No. 8:13-cv-1470-T-36TGW, 2015 U.S. Dist. LEXIS 125059
(M.D. Fla. Sep. 18, 2015) ..............................................................................38

*Caruso v. Golden Rule Ins. Co.*,
No. 13-60405-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS
147377 (S.D. Fla. Oct. 11, 2013)...................................................................44

*Casey v. Welch*,
50 So. 2d 124 (Fla. 1951) ..............................................................................38

*Catalano v. MarineMax*,
590 F. Supp. 3d 487 (E.D.N.Y. 2022)...........................................................25

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*,
95 A.D.2d 5 (N.Y App. Div. 1983) .........................................................26, 47

*Cita Tr. Co. AG v. Fifth Third Bank*,
879 F.3d 1151 (11th Cir. 2018) ...............................................................44, 49

*Crenshaw v. Lister*,
556 F.3d 1283 (11th Cir. 2009) (per curiam) ..........................................44, 49

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
   352 F.3d 775 (2d Cir. 2003) ..........................................................24

*Drilling Consultants, Inc. v. First Montauk Sec. Corp.*,
   No. 8:10-cv-2873-T-23EAJ, 2012 U.S. Dist. LEXIS 114250
   (M.D. Fla. Aug. 14, 2012) .............................................................36

*E-Professional Techs., LLC v. Primehealth of Ill., Inc.*,
   No. 8:20-cv-338-SCB-SPF, 2022 U.S. Dist. LEXIS 190530
   (M.D. Fla. June 15, 2022)..............................................................33

*Force v. ITT Hartford Life & Annuity Ins. Co.*,
   4 F. Supp. 2d 843 (D. Minn. 1998) ...............................................50

*Frazee, Inc. v. Reedy Creek Hosp., LLC*,
   No. 6:12-cv-1194-Orl-28GJK, 2013 U.S. Dist. LEXIS 49020
   (M.D. Fla. Apr. 4, 2013).................................................................45

*Gillman v. Chase Manhattan Bank, N.A.*,
   73 N.Y.2d 1 (1988).........................................................................25

*Glob. Quest, LLC v. Horizon Yachts, Inc.*,
   849 F.3d 1022 (11th Cir. 2017) .....................................................29

*Hotels of Key Largo v. Rhi Hotels*,
   694 So. 2d 74 (Fla. Dist. Ct. App. 1997)................................50, 51

*HTC Leleu Family Tr. v. Piper Aircraft, Inc.*,
   No. 1:12-cv-21118-KMM, 2012 U.S. Dist. LEXIS 149498
   (S.D. Fla. Oct. 17, 2012)................................................................51

*HTP, Ltd. v. Lineas Aereas Costarricenses*,
   685 So. 2d 1238 (Fla. 1996) ....................................................50, 51

*Hughes v. Kia Motors Corp.*,
   766 F.3d 1317 (11th Cir. 2014) .....................................................18

*Huron Tool and Eng'g Co. v. Precision Consulting Servs., Inc.*,
   209 Mich. App. 365 (Mich. Ct. App. 1995)...................................51

*Island Travel & Tours, Ltd. v. MYR Indep., Inc.*,
 300 So. 3d 1236 (Fla. 3d Dist. Ct. App. 2020) (per curiam)............29, 34, 52

*Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*,
 No. 13-61687-CIV-ROSENBAUM/HUNT, 2014 U.S. Dist.
 LEXIS 73180 (S.D. Fla. May 29, 2014).........................................34

*Maltz v. Union Carbide Chems. & Plastics* Co., 992 F. Supp. 286
 (S.D.N.Y. 1998)..............................................................................24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986).......................................................................19

*MidAmerica C2L Inc. v. Siemens Energy Inc.*,
 25 F.4th 1312 (11th Cir. 2022)...............................................*passim*

*MidAmerica C2L Inc. v. Siemens Energy Inc.,*
 No. 20-11266, 2023 U.S. App. LEXIS 7690 (11th Cir. Mar. 31,
 2023)........................................................................................*passim*

*Monsoon, Inc. v. BizJet Int'l Sales & Support, Inc.*,
 No. 16-80722-CIV-MARRA/MATTHEWMAN, 2017 U.S.
 Dist. LEXIS 26987 (S.D. Fla. Feb. 27, 2017) ...............................32

*Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc.*,
 955 So.2d 1124 (Fla. 4th DCA 2007).............................................38

*Ng v. HSBC Mortg. Corp.*,
 No. 07-CV-5434 (RRM)(VVP), 2011 U.S. Dist. LEXIS 88549
 (E.D.N.Y. Aug. 10, 2011).........................................................27, 47

*Porter v. Ray*,
 461 F.3d 1315 (11th Cir. 2006) ......................................................19

*Regan v. Bank of Am., N.A.*,
 2023 U.S. Dist. LEXIS 173505 (S.D. Fla. Sept. 27, 2023)............51

*Rennolds v. Rennolds*,
 312 So. 2d 538 (Fla. Dist. Ct. App. 1975)......................................41

*Royal v. Parado*,
   462 So. 2d 849 (Fla. Dist. Ct. App. 1985)................................................37, 42

*Rubin v. Rubin*,
   275 A.D.2d 404 (N.Y. App. Div. 2000) ......................................................42

*Sapuppo v. Allstate Floridian Ins. Co.*,
   739 F.3d 678 (11th Cir. 2014) .............................................................49, 57

*Scott v Palermo*,
   233 A.D.2d 869 (N.Y. App. Div. 1996) ......................................................47

*SEC v. Imperiali, Inc.*,
   No. 20-13308, 2021 U.S. App. LEXIS 28610 (11th Cir. Sept.
   21, 2021) ..............................................................................................56

*Simar Holding Corp. v. GSC*,
   87 A.D.3d 688 (N.Y. App. Div. 2011) ...........................................25, 26, 47

*Skop v. City of Atlanta*,
   485 F.3d 1130 (11th Cir. 2007) ...............................................................19

*Sokolow v. Damico*,
   No. 19-CV-80278-REINHART, 2019 U.S. Dist. LEXIS 220849
   (S.D. Fla. Dec. 26, 2019).................................................................*passim*

*Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*,
   904 F.3d 1197 (11th Cir. 2018) ...............................................................52

*Thompkins v. Lil' Joe Records, Inc.*
   476 F.3d 1294 (11th Cir. 2007) .....................................................36, 51, 52

*TransPetrol, Ltd. v. Radulovic*,
   764 So. 2d 878 (Fla. Dist. Ct. App. 2000)..................................................39

*United States v Campbell*,
   26 F.4th 860 (11th Cir. 2022) ..................................................................15

*United States v. Levy*,
   379 F.3d 1241 (11th Cir. 2004) ...........................................................42, 57

*Walker v. Darby*,
    911 F.2d 1573 (11th Cir. 1990) ....................................................................19

*Webb v. Kirkland*,
    899 So. 2d 344 (Fla. Dist. Ct. App. 2005)................................................41, 42

*Woods v. On Baldwin Pond, LLC*,
    634 F. App'x 296 (11th Cir. 2015)..............................................................53

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) ..................................................................35

**Statutes**

Fla. Stat. § 95.11(3)(k) .....................................................................................42

N.Y. U.C.C. Law §2-302(2) ........................................................................24, 44

N.Y. U.C.C. Law §2-316(2) ...............................................................................24

**Rules**

Fed. R. Civ. P. 56(a) .........................................................................................18

Fed. R. Civ. P. 56(c)(1)(A) ................................................................................19

N.Y. C.P.L.R. 213[1] .........................................................................................42

# INTRODUCTION

Secure's arguments for reversal on this appeal leave much behind in the telling. On review of its contentions, one would not know that the merits of its arguments have previously been considered and resolved – adversely to Secure – by this Court. One also would not know that the district court's ruling on this appeal relies on reasoning and analysis previously embraced by this Court, as well as on equally dispositive grounds that Secure does not acknowledge or address. Secure nevertheless wants to prolong this litigation without any colorable reason for doing so. But this case has already consumed more than its fair share of public and private resources from the parties, the district court, a jury, and this Court. It is time to bring Secure's legal misadventure to a close.

This Court previously explained, in detail, why Secure's remanded claims for Breach of Implied Warranty (Count II), Fraud (Counts IV and V) and Rescission (Count VI) cannot survive on the record or applicable law. On remand, as it was invited to do, the district court adopted this Court's reasoning and Siemens Energy added other independent bases for dismissal by pointing to similar incurable deficiencies in each one of the respective counts. Secure acknowledges none of this. But it is worse than that. Secure's arguments for reversal mischaracterize the record or ignore it altogether. Its arguments likewise

ignore the relevant litigation history and its own conduct in the litigation. And Secure's arguments further evade or mislead on the controlling law and its undisputed impact on the proper outcome of this case. In fairness to the district court, Siemens Energy sets the record straight below. With that analysis in hand, as before, affirmance is called for and respectfully urged.

## RESTATEMENT OF THE ISSUES

Siemens Energy restates the issues for appeal as follows:

1.     Did the district court properly enter summary judgment on Secure's claim for breach of implied warranty in view of the parties' express contractual disclaimer of implied warranties and Secure's failure to plead or supply evidence that the disclaimer was unconscionable, as well as Secure's failure to supply evidence that its equipment could not satisfy its intended purpose or supporting its damages theory?

2.     Did the district court properly enter summary judgment on Secure's fraud claims for damages and rescission because those claims are barred by Florida's independent tort doctrine, and Secure failed to (i) plead fraudulent inducement, (ii) supply evidence of a common law duty to disclose, (iii) demonstrate that legal remedies are inadequate, or (iv) supply evidence to prove alleged damages?

3. Did the district court properly enter summary judgment on Secure's rescission-failure of consideration claim in view of Florida law, which does not recognize such claims, Secure's failure to show legal remedies are inadequate, and the statute of limitations which bars this claim?

## STATEMENT OF THE CASE

This case has a lengthy litigation history most of which goes unacknowledged by Secure. That history, including as reflected in this Court's prior opinions, is directly relevant to the merits of the summary judgment underlying this appeal. Siemens Energy recounts the pivotal points of that history here to put the district court's summary judgment ruling in its proper perspective.

### A. Secure And Siemens Energy Enter A Series Of Agreements Involving Gasification Equipment And Technology

As this Court's prior opinions reveal, this lawsuit stems from Secure's failed efforts to launch an energy-related business. Secure's business plan went through multiple iterations starting out as "self-build" project to produce town-gas in Decatur, Illinois, morphing to a second plan to build a coal-to-substitute natural gas plant in that same location, and then morphing yet again to a third plan for a coal-to-gasoline plant in either Decatur or West Paducah, Kentucky. Docket Number 149-2 ("DN-149-2") at 47:13-50:18, 56:25-59:8, 180:20-185:24, 221:23-223:9, 285:15-21. Lastly, in 2011, Secure hatched yet another plan – its

fourth – to build a coal-to-methanol plant in West Paducah using a new subsidiary, C2L. *Id*. at 118:24-119:24.

The common threads in each plan involved (i) two gasifiers purchased from Siemens Energy and (ii) a license from Siemens Energy for the technology and support to set up, operate, and repair the gasifiers. Both threads, in turn, were reflected in a series of written contracts, starting with the parties' 2007 Equipment Supply Agreement ("2007 ESA") and Project License Agreement. *Id*. at 180:20-185:24, 199:23-200:25; DN-149-3–149-4 at 72.[1] The initial 2007 ESA included limited-duration equipment warranties and performance guarantees. DN-149-3 at 20, 24-26 [§§5.1.1, 5.5.3].

Siemens Energy delivered the gasifiers in 2009, but Secure never unpacked them. DN-149-2 at 180:20-185:24; DN-185 at 47-48. Nor did Secure pay the agreed-to license fees. DN-149-2 at 199:23-200:25.

When Secure changed its business plan after 2007, it needed and requested from Siemens Energy a new license. DN-149-22 at 5 [RFA Nos. 10-13]. As a result, in 2010, the parties terminated their 2007 contracts, expressly agreed that Siemens Energy had fulfilled its obligations under those contracts, and entered

---

[1] Cited docket page numbers refer to the pdf page numbers of materials filed in the district court.

two new agreements that displaced the first ones. *Id*.; DN-149-2 at 281:7-10, 283:8-285:7-21; Exh. B at 7. In the 2010 "Completion Agreement", the parties expressly acknowledged that neither had any claim under the prior 2007 contracts on any legal theory and that Secure needed the payment deadline of the 2007 contracts extended specifically because of its failure to pay the fees that were due. DN-149-4 at 73-82.

In the companion 2010 License and Service Agreement ("2010 LSA"), Siemens Energy accordingly agreed to extend the performance guarantees, equipment warranties, and Secure's deadline to pay the past-due license fees. DN-149-22 at 5 [RFA Nos. 10-13]; *see* DN-149-5 at 19-22, 25-34 [§§3.0, 3.2.1, 7.0]; *compare with* DN 149-3 at 11-18, 20-28 [§§3.0-3.4, 5.0-5.8]. The equipment warranty extension was made on condition that Secure pay an extension fee of €1.0M by August 30, 2011. DN 149-5 at 19, 21 [§§3.1.1, 3.2.2]. Secure never paid the fee, however, and the warranty was abandoned. DN-149-2 at 282:12-15.

As before, Secure failed to pay its license fees under the 2010 LSA. DN-149-10 at 14; *see* DN-218 at 13. And, in 2011, Secure told Siemens Energy it had yet another plan (by this point, its fourth) to build a coal-to-methanol plant in West Paducah, Kentucky. DN-149-9 at 182:8-183:14, 221:24-224:13. Secure

needed and asked for another new license, and in July 2012, the parties executed another Completion Agreement, terminating the 2010 LSA, stating again that neither had any claims against the other, and releasing all claims under prior agreements. DN-149-7 at 63-65; DN-149-2 at 118:24-119:24. They also entered a companion 2012 LSA,[2] which, at Secure's request, further extended the performance guarantees and license fee payment deadlines. DN-149-5 at 47–DN-149-7 at 62; DN-149-22 at 5 [RFA Nos. 10-13]; DN-149-23 at 4-5 [¶¶9, 10].

Unfortunately, again, past was prologue. Secure had specifically agreed to make payments in 2013 and 2015 but missed both deadlines. DN-149-5 at 5, 56; DN-218 at 13. In March 2015, Secure suspended its operations. DN-218 at 12; *see* DN-149-9 at 100-101. At the time, its own financial statements acknowledged that its "prior losses and other factors raise substantial doubt about [Secure's] ability to continue as a going concern." DN-149-5 at 8; DN-149-10 at 21. Secure likewise recognized it would be unable "to see the planned coal to methanol project to fruition" and considered a fifth project iteration for a nitrogen fertilizer plant. DN-149-5 at 8.

---

[2] C2L is the contracting party for the 2012 LSA. Secure and C2L are collectively referred to as Secure.

In early 2016, Secure expressed renewed hope for another new project and Siemens Energy again offered to extend the guarantees and the fee payment deadlines. In the end, however, Secure was unable to obtain the necessary financing, permitting, or vendor contracts for its hoped-for plant. DN-149-11 at 40; DN-149-9 at 33-34; DN-149-2 at 41-42; DN-218 at 13.

When Secure declined Siemens Energy's 2016 offer to further extend the guarantees and payment deadlines, Siemens Energy terminated the 2012 LSA and invoiced Secure for the contract's termination fee. DN-149-7 at 70-73; DN-149-8 at 4-6; DN-218 at 13-14. Secure responded with this lawsuit.

## B.    Secure's Claims and the District Court Litigation

In its First Amended Complaint (FAC), Secure's first count alleged breach of contract based on alleged repudiation of the 2012 LSA. Four additional counts followed, all based on alleged design defects in the gasification equipment Siemens Energy had supplied and Secure had never unpacked: breach of implied warranty of fitness for a particular purpose allegedly evidenced by the 2012 LSA (Count II); fraud-damages and fraud-rescission of the 2012 LSA (Counts IV and V); and rescission-failure of consideration related to the parties' 2007 ESA and

subsequent contracts (Count VI).[3]  DN-63 at 7-10, 11-22. Siemens Energy

counterclaimed for breach of the 2012 LSA based on Secure's failure to pay the

agreed upon termination fee.  DN-75.

Secure's operative FAC expressly limited its claims to those arising *after*

*March 31, 2010* because, as part of the 2010 Completion Agreement, Secure had

waived and released any claims existing before then.  DN-74 at 13-14; DN-63 at

13, 17.  As pled in the FAC, therefore, Secure's fraud claims purported to

implicate only the 2012 LSA. Secure did not allege any misrepresentations or

omissions *before* March 31, 2010, and Secure did not seek rescission, based on

any type of alleged fraud, of any of the preceding contracts that the parties had

closed down.  DN-63 at 11-19.

To support its claims, Secure proffered an expert, Dr. Herbert Kosstrin,

who opined that its still unopened gasification equipment had multiple "material

design defects" that would have prevented Siemens Energy from meeting

performance guarantees and Secure from obtaining project financing.  DN-150-

2 at 5-14.  After discovery concluded, Siemens Energy challenged the

_____

[3] Secure voluntarily dismissed its Count III for fraud-misrepresentation related to
support of the project.

admissibility of Dr. Kosstrin's opinions and moved for summary judgment on all of Secure's claims.

In its *Daubert* motion challenging Dr. Kosstrin, Siemens Energy demonstrated why his opinions were unreliable, lacked the necessary foundation, and did not rise above rank speculation. DN-150. Most fundamentally, Dr. Kosstrin had never inspected Secure's gasifiers or tried to determine whether they would be suitable for Secure's proposed project. DN-150-3 at 77:2-81:13. Instead, he admittedly based his defect opinions on documents relating to a different Siemens Energy customer in China – the "NCPP plant" – which used Siemens Energy-supplied gasifiers at a different plant, operated under different and out-of-specification conditions. DN-150-2 at 5, 10-11; DN-150-3 at 50:12-59:22, 70:9-72:25, 118:3-119:19.

In its summary judgment motion, Siemens Energy explained why each Count in the FAC failed as a matter of fact and law. Count I, for breach of contract, failed because Secure could not prove damages causation. DN-207. Count II, for breach implied warranty, failed because the 2012 LSA expressly disclaimed any implied warranties, and Secure could not prove that the agreed to disclaimer was unconscionable. DN-149 at 21-23; DN-166 at 9. Counts IV and V, for fraud, were barred by the independent tort doctrine because they were

based on the same duties reflected in the parties' contracts. DN-149 at 12-18; DN-166 at 4-7. These claims also failed on their merits because the critical elements for fraud, namely an enforceable promise, reliance and causation, were lacking. DN-149 at 18-19. Finally, Count VI, rescission-failure of consideration, also lacked merit because neither Florida nor Missouri law recognize such claim, and the claim was also time-barred.[4] DN-149 at 23; DN-166 at 9-10.

With the infirmities of its fraud and other defect-based claims exposed, Secure shifted gears and began filing belated and unsupported motions for leave to amend to expand its fraud theories and add new allegations dating back to the inception of the parties' relationship. DN-133; DN-133-1; DN-145; DN-212; DN-212-1. The district court, however, held Secure to its allegations *as pled in the FAC*, denying each of the improper maneuvers as untimely, unsupported by

---

[4] On summary judgment the first time around, Siemens Energy argued that either Missouri or Florida law applied to Count VI (DN-149 at 23, DN-166 at 9-10) and Secure was silent on choice of law (DN-161 at 23, n.4) or argued that Florida law applied to the 2007 ESA (DN-146 at 12-13). The district court had previously ruled that New York law did not apply to Count VI. DN-74 at 13-14. Secure never argued for New York law (or disputed the choice of law) on this Count in the first appeal and this Court applied Florida law in its discussions. *See MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F.4th 1312, 1329-1330, 1333, 1335 (11th Cir. 2022) ("*MidAmerica I*"), *vacated and superseded on reh'g. by MidAmerica C2L Inc. v. Siemens Energy Inc.,* No. 20-11266, 2023 U.S. App. LEXIS 7690 (11th Cir. Mar. 31, 2023) ("*MidAmerica II*"); *MidAmerica II*, 2023 U.S. App. LEXIS 7690 at *32-34. The effect of Secure's waiver and this Court's decisions on Secure's argument in the current appeal for New York law is discussed more fully below.

the relevant legal standard, and lacking good cause. DN-137; DN-154; DN-213; *see* DN-135, DN-152, DN-152-1. This Court unanimously affirmed the district court's exercise of discretion in the prior appeal. *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *42-47.

Turning to Siemens Energy's *Daubert* motion, the district court ruled that Dr. Kosstrin's design defect opinions were unreliable and inadmissible principally because he failed to consider or compare the operating conditions and use of the equipment at the NCPP plant with the specified operating conditions and use of the equipment at Secure's hypothetical plant. DN-188 at 18-19. He therefore could only speculate as to the cause of issues at the NCPP plant and whether its operation would have any correlation to what would have occurred at Secure's hypothetical plant.[5] *Id.; see* DN-185 at 4-15, 18-19. Controlling case law therefore supported exclusion of his defect-based opinions (DN-188) – a ruling this Court also unanimously affirmed on the first appeal. *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *22-31.

---

[5] Dr. Kosstrin thus "freely admit[ted]" that he did not "provide an analysis in support of his defect theories", and his report did nothing more than cite "operational problems experienced in China." *Id*.

With Dr. Kosstrin's opinions excluded, the district court requested supplemental briefing on how that would impact Siemens Energy's pending summary judgment motion. DN-190. Siemens Energy responded that Secure's defect-based claims (Counts II, IV-VI) should fail because Secure had no expert to prove its alleged "material design defects." DN-199.

After receiving the supplemental briefing, the district court, applying Florida law, granted summary judgment on Secure's defect-based claims, Counts II, IV-VI, for lack of evidentiary support and declined to address the other bases for summary judgment that Siemens Energy had raised and the parties had briefed. DN-203 at 6-8. Later, the court also granted summary judgment on Secure's breach of contract claim (Count I) because Secure could not prove damages; *i.e.*, that its alleged damages were caused by Siemens Energy's alleged contract repudiation. DN-208 at 10.

Before the trial of Siemens Energy's remaining counterclaim, Secure again tried to insert into the case an unpled theory. DN-218 at 10. Siemens Energy moved *in limine* to exclude it, and the district court granted the motion. DN-230; DN-237; DN-238 at 12-14. The parties also stipulated to Secure's inability to perform under any of the parties' agreements or to obtain funding and Siemens Energy's ability and stated intent to meet its contractual obligations. DN-218 at

11-14.  Consistent with these concessions and the evidence submitted, the jury returned a verdict providing for Siemens Energy to recover the $13M termination fee.[6]  DN-287; *see* DN-293, DN-305.

### C.    Secure's First Appeal and this Court's Decisions

Secure appealed the district court's decisions denying leave to amend, excluding Dr. Kosstrin, granting summary judgment on Secure's substantive claims, and denying its motion for a new trial.  This Court's three-judge panel unanimously affirmed.  *MidAmerica I*, 25 F.4th at 1338.

In analyzing Siemens Energy's summary judgment motion, the Panel noted that the district court "granted summary judgment against Secure on [its defect-based claims] based solely on the theory that, because these claims were premised on a design defect, Secure needed an expert witness to testify as to the defect."  *Id*. at 1330.  The Panel then held that Florida law did not require "plaintiffs in contract cases to prove the defective nature of the product at issue with expert testimony."  *Id*. at 1330-31.  Although the Panel concluded that "the district court's reason for granting summary judgment [on these claims] was incorrect," it held that it could affirm summary judgment "on any basis supported by the record."  *Id*. at 1331.  The Panel accordingly analyzed the summary

---

[6] Secure did not appeal this adverse judgment and it is final.

13

judgment record and found that each of Secure's claims had been properly dismissed:

- **Count I**: Secure's breach of contract claim failed because Secure could not prove damages causation.

- **Count II:** Secure's breach of implied warranty claim failed based on the parties' warranty disclaimer and Secure's failure to prove unconscionability.

- **Counts IV and V:** Secure's fraud claims failed based on the independent tort doctrine because these claims were "in essence" a restatement of contract/warranty claims, the parties' relationship was contractual, and Siemens Energy's duties arose from the contracts, not common law.[7]

- **Count VI:** Secure's rescission-failure of consideration claim failed because Florida law does not recognize such claims and Secure did not show legal relief would be insufficient.

*Id.* at 1331-35.

The Panel also affirmed the denials of leave to amend the FAC to add new fraud theories and allegations because Secure's motions were untimely and without cause. *Id*. at 1335-36. Notably, the unpled allegations that Secure unsuccessfully sought to inject via its proposed Second Amended Complaint

---

[7] The Panel incorrectly noted that Secure had "voluntarily dismissed its claim for fraudulent inducement" of the 2007 LSA, but its error was immaterial because it *correctly* noted that Secure *waived* any such claim in the 2010 Completion Agreement. *See* DN-339 at n.3; DN-338 at n.7. Secure also never claimed fraudulent inducement of the 2007 LSA in the first instance. DN-63.

include the very same attacks and the same purported "misrepresentations" and "omissions" that Secure tries to resurrect on this appeal – without acknowledging that those allegations were never pled in its FAC *or* the district court's rulings denying leave to add them or this Court's affirmance of those rulings. *Id.*; *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *42-47; DN-137, DN-154, DN-213; *compare* DN-63 (FAC allegations) *with* DN-133-1 ¶¶35-109 (proposed but rejected allegations) *and* Appellant's Brief ("Brief") at 13, 15-18, 27-28, 30-31 (the same proposed but rejected allegations). Lastly, the Panel affirmed the district court's exclusion of Dr. Kosstrin's opinions, the rejection of Secure's unpled theory, and the denial of Secure's motion for new trial. *MidAmerica I*, 25 F.4th at 1326-29, 1336-38.

Secure petitioned for a rehearing based on an *en banc* decision that came down after the Panel's decision, *United States v Campbell*, 26 F.4th 860 (11th Cir. 2022). *Campbell* held that "failure to raise an issue in an initial brief on direct appeal should be treated as a forfeiture of the issue," and therefore, the issue may be raised by the court *sua sponte* only in extraordinary circumstances. *Campbell,* 26 F.4th at 873-75. Secure argued that Siemens Energy had forfeited the alternative grounds on which the Panel had relied to affirm summary judgment on Secure's defect-based claims (Counts II, IV-VI) by not raising those

grounds in its appellate brief. Over Siemens Energy's objections, the Panel agreed, vacated its original opinion, and issued a new opinion applying *Campbell*'s forfeiture principle. *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *2-54.

As relevant here, the Panel's new opinion incorporated the same factual background and restated and confirmed the other comprehensive rulings set forth in the original opinion – specifically with reference to affirming the denials of leave to amend, Dr. Kosstrin's exclusion, summary judgment of Count I, exclusion of Secure's new theory, the judgment in Siemens Energy's favor on its counterclaim, and the denial of Secure's motion for a new trial. *Id*. at *2-35, 38-54. The Panel remanded Counts II, IV, V and VI, while explaining that, on remand, Siemens Energy was free to revisit the alternate grounds for summary judgment which the Panel previously had relied on in rejecting Secure's case on the merits. *Id*. at *33-38, 54.

Secure again petitioned for rehearing arguing that the new opinion contained "factual inaccuracies." Its petition was denied (USCA11 Case: 20-11266, DN-77, DN-78-2), and the case was remanded to the district court.

### D. The District Court's Proceedings on Remand

On remand, Siemens Energy embraced this Court's suggestion and renewed its motion for summary judgment on Counts II, IV, V and VI, relying on the same grounds that this Court had previously deemed meritorious, as well as several additional and equally dispositive grounds. After full briefing, the district court granted summary judgment in Siemens Energy's favor on each count. DN-339.

The district court found that Secure's breach of implied warranty claim (Count II) was barred because the parties (i) had expressly disclaimed all implied warranties, (ii) Secure did not plead unconscionability, and (ii) "even if [Secure] had preserved this theory of recovery, there is no genuine issue of material fact relating to the applicability of the disclaimer and the lack of unconscionability." *Id*. at 6-11. The court also ruled that Secure failed to submit admissible evidence supporting the proposition that the "equipment and technology could not satisfy its intended purpose" or of any alleged damages caused by the alleged warranty breach. *Id*. at n.9.

Turning to Secure's fraud claims (Counts IV and V), the court found they were barred by Florida's independent tort doctrine because Secure's fraud allegations were not "separate and distinct from defendants' performance under

the contract"; instead, the claims "assert that the gasifiers are defective and are simply a restatement of Secure's contract and breach of warranty claims." *Id*. at 11-12. These claims also failed because Secure did not plead in the FAC the fraud theory it urged – fraudulent inducement of the 2012 LSA. *Id*. at n.10, citing DN-338 at 3. Count V for "fraud-rescission" also failed because "Secure does not argue, much less demonstrate, that legal remedies are inadequate." *Id*. at 14.

Finally, the district court held that Count VI, for "Rescission – Failure of Consideration," was not actionable because (i) Florida law does not recognize such a claim, (ii) it was barred by the statute of limitations, and (iii) Secure did not show why a legal remedy would be inadequate. On the latter ground, the court notably observed that the parties' 2007, 2010, and 2012 agreements all provide for specific legal remedies for any alleged defects and breaches. *Id*. at 14-15.

## STANDARDS OF REVIEW

This Court reviews the grant of summary judgment *de novo*, applying the same legal standards as the district court. *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1331 (11th Cir. 2014). Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

moving party bears the initial burden of "citing to particular parts of materials in the record" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In determining whether a genuine dispute of material fact exists, the Court reads the evidence and draws all factual inferences therefrom in the light most favorable to the non-moving party and resolves any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). That said, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Ultimately, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This Court can affirm summary judgment on any ground that appears from the record and that is raised by the appellee. *See MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *34-36.

## SUMMARY OF ARGUMENT

The history of this litigation, albeit largely ignored by Secure, dictates the outcome of this appeal. Siemens Energy initially obtained summary judgment on Secure's contract and tort claims for failure of proof or lack of support under controlling law. Secure appealed the grant of summary judgment and several additional rulings, including one rejecting its expert's unfounded testimony and several directed at Secure's misdirected attempts to amend its complaint to add claims that never appeared in its pleadings. This Court affirmed the summary judgment on grounds that were urged by Siemens Energy in the trial court and thus appeared in the record, and likewise rejected Secure's claims of error relating to the exclusion of its expert and efforts to amend. Faced with a subsequent *en banc* opinion, this Court modified its disposition on the summary judgment, reversed on a narrow ground on four counts in Secure's operative complaint, but otherwise affirmed in all other respects. As to the remanded counts whose rejection it originally affirmed, this Court expressly indicated that Siemens Energy was free to renew its motion, which it did.

Not surprisingly, the district court granted the motion because what was true when this Court originally affirmed is still true today – Secure's legal and equitable claims that Siemens Energy ruined its fledgling business have no basis in fact or law. Nevertheless, Secure persists with this appeal, arguing that summary judgment was improvidently granted. This assertion has no more cache now than it did on its prior appeal.

As for Secure's specific claims of error, consider that:

1. The lack of merit in Secure's breach of implied warranty claim is the product of a settled record and settled law. Secure was represented by counsel, and had a technical consultant, when it expressly agreed to a clear and conspicuous disclaimer of implied warranties in each of the parties' agreements. Secure neither pled, nor submitted any evidence showing that the disclaimer was unconscionable, because it could not. Nor was there any evidence that the gasification equipment, as warranted, did not meet its intended purpose or of any alleged damages from the unproven breach. For any or all of these reasons, Secure's breach of implied warranty claim is factually and legally without merit.

2. The same is true with respect to Secure's fraud counts. The independent tort doctrine precludes Secure's fraud claims, which indisputably are based on alleged breaches of duties arising from the various contracts it entered. Nor did

Secure plead the fraud theory it urges or provide evidence of a common law duty to disclose. Nor did Secure provide evidence of, or attempt to show, any inadequacy in its legal remedies for its fraud-rescission claim, nor its alleged damages arising from the purported fraud at all. Just as with implied warranty, there is no basis for a trial on Secure's unsupported fraud theories and no claim of reversible error is possible.

3. As for rescission-failure of consideration, the result is the same. Secure's claim fails at the threshold because Florida law – which is binding on this appeal based on a waiver and law of the case – does not recognize a claim for rescission based on failure of consideration. This claim is also barred by the statute of limitations, a ground Secure does not even address. Further, the parties' contracts expressly included specific legal remedies for an alleged breach, and Secure again failed to show those remedies were inadequate. No claim of reversible error thus is possible on this claim either.

## ARGUMENT

### A. The Judgment Should Be Affirmed: The Legal Rulings Are Supported By The Record And Controlling Law

Secure has a litany of complaints regarding the district court's summary judgment ruling. But all of them assiduously avoid the one thing that matters most: an examination of that ruling in light of the record and applicable law. The

district court carefully addressed each of Secure's claims and its analysis not only tracked the reasoning this Court previously laid down on the same record, but also pointed to other incurable infirmities in Secure's various counts. Siemens Energy added other independent reasons for dismissal as well. When taken individually or together, these many independent grounds demonstrate why it is time to put this case to bed.

1.    **The District Court Properly Granted Summary Judgment on Count II for Breach of Implied Warranty**

To begin with, the district court properly disposed of Secure's breach of implied warranty claim because the parties agreed to a clear and conspicuous disclaimer, written in all capital letters in Section 7.12 of the 2012 LSA[8]:

> THE WARRANTIES AND GUARANTEES PROVIDED ARE IN LIEU OF ALL OTHER WARRANTIES AND GUARANTEES, WHETHER STATUTORY, EXPRESSED OR IMPLIED, INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE, AND ALL WARRANTIES ARISING FROM COURSE OF DEALING OR USAGE OF TRADE.

DN-149-5 at 68, §7.12.

Secure does not dispute its prominent contractual agreement and controlling New York law gives full effect to such a disclaimer, by statute and

---

[8] As the district court noted, the same disclaimer is also in the 2007 ESA and 2010 LSA. DN-149-3 at 28, §5.8; DN-149-5 at 34, §7.12.

case law.  *See* N.Y. U.C.C. Law §2–316(2) (to disclaim implied warranty, contract need only state that "[t]here are no warranties that extend beyond the description on the face hereof"); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2003) (a "party cannot justifiably rely on a representation that is specifically disclaimed in an agreement"); *Maltz v. Union Carbide Chems. & Plastics* Co., 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (implied warranty claims fail where disclaimed).

Beyond that, while New York law permits a party to challenge an express disclaimer on grounds of alleged unconscionability, Secure never pled facts supporting either procedural or substantive unconscionability, as required under New York law, despite the opportunity to do so.  DN-63; *Accurate Copy Serv. of Am., Inc. v. Fisk Bldg. Assocs. L.L.C.*, 72 A.D.3d 456, 457 (N.Y. App. Div. 2010) (to assert unconscionability, a party must "have pleaded facts supporting both procedural and substantive unconscionability"); N.Y. U.C.C. Law § 2-302(2) ("[w]hen [unconscionability] is *claimed*," parties may present evidence to aid court in making determination (emphasis added)).  There accordingly is no basis on which Secure can disavow its disclaimer, and the district court's ruling rejecting Secure's implied warranty count can be affirmed for this reason, too. DN-339 at 8-9.

But the district court went further and explained why, on the undisputed record, no claim of unconscionability could succeed in any event.[9] *Id*. The gravamen of unconscionability is the absence of meaningful choice by one of the parties together with contract terms unreasonably favorable to the other party. *Simar Holding Corp. v. GSC*, 87 A.D.3d 688, 689 (N.Y. App. Div. 2011); *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). To prove unconscionability and avoid summary judgment, Secure thus was required to come forward with evidence showing that at the time of execution, the 2012 LSA warranty disclaimer was both procedurally and substantively unconscionable. *Simar,* 87 A.D.3d at 690; *Catalano v. MarineMax*, 590 F. Supp. 3d 487, 503 (E.D.N.Y. 2022). Secure never submitted evidence to meet these requirements and there was no way it could credibly do so. DN-339 at 10; *see* DN-337 at 20-21.

---

[9] In its opposition to Siemens Energy's original summary judgment motion, Secure argued only that the unconscionability issue was "not ripe for resolution" based on unpled new fraud allegations that it was attempting to interject via its motions for leave to amend the FAC. DN-161 at 22; DN-166 at 9. No amendment to add new fraud or any other new allegations was possible, however, because the court rejected Secure's untimely and meritless efforts to amend. This Court affirmed those rulings, and the pleadings are final.

To that end, Secure admitted that it had its own technical consultant and was represented by counsel during the parties' contract negotiations. DN-149-22 at 6 [RFA No. 14]; DN-149-2 at 173:17-179:22; DN-149-14 at 168:11-173:18, 175:15-176:22, 180:3-25. Secure also admitted it had meaningful choice; it chose to purchase and license from Siemens Energy in 2007 after considering at least five other suppliers, and admitted that the parties' subsequent agreements, including the 2012 LSA, were entered *at Secure's request* because its plans changed and it could not pay the license fees. DN-149-22 at 5, 7 [RFA Nos. 10, 11, 17-19]; DN-149-13 at 15. The 2012 LSA's terms also did not unreasonably disfavor Secure, which received extended performance guarantees and deadlines to pay its license fees, as well as Siemens Energy's commitment to make repairs as needed to ensure performance tests were met. DN-149-5 at 54, 56, 64-67 [§§1.0 ("Remedy"), 3.2.1, 7.9, 7.9.3.2]; DN-149-22 at 7 [RFA Nos. 17-19].

Because there was no conceivable factual basis for an unconscionability argument, summary judgment on Count II was compelled. *Simar*, 87 A.D.3d at 689-90 (trial is necessary only "[w]here there is doubt . . . as to whether a contract is fraught with elements of unconscionability"—but not where "the significant facts germane to the unconscionability issue are essentially undisputed") (citations and internal quotation marks omitted); *Cayuga Harvester, Inc. v. Allis-*

*Chalmers Corp.*, 95 A.D.2d 5, 20-21 (N.Y App. Div. 1983) ("[T]ransactions of a commercial nature [are] rarely found [to be] unconscionab[le]"; finding no unconscionability on summary judgment); *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434 (RRM)(VVP), 2011 U.S. Dist. LEXIS 88549, at *24-26 (E.D.N.Y. Aug. 10, 2011) (rejecting on summary judgment conclusory allegations of "'high pressure'" tactics and unequal bargaining power).

But there is still more. The district court went on to hold that Secure failed to supply evidence (i) that its gasifiers could not meet their intended purpose, or (ii) that the alleged breach and defects resulted in Secure's alleged damages. DN-339 at n.9. Secure claimed that its damages were its lost project investments – over $40M for equipment purchased under the 2007 contract, which allegedly could no longer be incorporated into any gasification plant, and an additional $46M because it was allegedly "forced" to abandon the design and engineering of the West Paducah plant. *Id.*; DN-63, ¶¶34, 58. However, as the district court noted, the parties terminated the 2007 ESA and 2010 ESA, expressly agreed that Siemens Energy had fulfilled its obligations under those contracts and entered into new contracts. DN-149-22 at 5 [RFA Nos. 10-13]; DN-339 at n.9; DN-149-4 at 73-82; DN-149-7 at 63-65. Secure's purported defect and harm allegations accordingly went nowhere because of its own express concessions.

In fact, as the district court also observed, Secure's gasifiers never operated and Secure never even uncrated or installed them. And Secure had no expert or other competent evidence that its alleged lost investment or inability to obtain funding were reasonably certain to have followed from the allegedly defective equipment. DN-336 at 23-25; DN-338 at 11. The record not only lacks evidence on these critical issues, it expressly refutes them. The reasons Secure could not complete its project were of its own making.[10] Specifically, as the district court noted:

> Secure admitted that it lacked the necessary funding for any iteration of its project before March 2010. (*Id.* at 3, RFA No. 9). Secure also admitted it lacked funding for any iteration of the project before July 2012. (*Id.* at 6, RFA No. 20). And Secure admitted it "never had the funding necessary for any iteration of their project." (*Id.* at 7, RFA No. 22).

DN-339 at n.9.

---

[10] As the district court noted, Secure only offered "conclusory allegations put forth by Secure's counsel" regarding its alleged damages. DN-339 at n.9. For example, Secure had speculated that a jury could "conclude that a bank would not finance a project built around equipment that needed to be 'scrapped'" and that SK "knew that the gasifiers were flawed" and "without required modifications, SK could not provide Secure with a final maximum EPC contract price." DN-337 at 20. But the evidence to which Secure pointed did not support its assertion; what these nonparties would do, or not do, and how Secure's business purportedly would be impacted, was rank speculation, nothing more. DN-338 at 11; DN-339 at n.9.

Here, for a host of reasons that the district court recognized and the record abundantly supports, Secure's breach of warranty claim is subject to dismissal.

## 2. The District Court Properly Granted Summary Judgment on Secure's Fraud Claims (Counts IV and V)

Secure's fraud claims are equally infirm. As the district court alternatively found: (1) Florida's independent tort doctrine precludes these claims; (2) Secure failed to plead any actionable fraudulent inducement; and (3) Secure did not offer evidence that legal remedies were inadequate to justify its fraud-rescission claim. Siemens Energy offered an additional reason to reject these claims that also followed from the undisputed record: Secure did not and could not substantiate that Siemens Energy had breached a common law duty to disclose.

### a. The Court Properly Ruled Secure's Fraud Claims Are Barred by the Independent Tort Doctrine

Under the independent tort doctrine, a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract. *Island Travel & Tours, Ltd. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d Dist. Ct. App. 2020) (per curiam) (fraudulent inducement claim barred). Therefore, unless tort "allegations are separate and distinct from defendants' performance under the contract," the doctrine applies to prevent recovery on a fraud claim. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017);

*Brooks v. Brooks Consultants, Inc.*, No: 6:22-cv-669-WWB-LHP, 2022 U.S. Dist. LEXIS 202498, at *17 (M.D. Fla. Nov. 7, 2022) (doctrine precludes "fraudulent misrepresentation claims against [the defendant that] arise out of alleged contractual duties alone").

Secure based its fraud claims on the theory that Siemens Energy had superior knowledge of the alleged material defects, had a duty to disclose the alleged design defects to Secure, and failed to do so. DN-339 at 11; DN-63 ¶¶42-79. These claims, like Secure's warranty claim, stemmed from Siemens Energy's alleged failure to meet its contractual duties relating to the gasification equipment. As a result, the district court properly found that Secure's fraud claims are "simply a restatement of Secure's contract and breach of warranty claims," and thus were barred by the independent tort doctrine. DN-339 at 11-14.

The district court's analysis aligns with this Court's original appellate opinion, which observed that Secure's fraud claims are "premised solely on the notion that the gasifiers are, in fact, defective" and fail "because they are, in essence, simply a restatement of Secure's contract and breach of warranty claims." *MidAmerica I*, 25 F.4th at 1333. This Court specifically found, moreover, that the fraud claims "are not—and indeed could not—be premised on

any fraudulent misrepresentation or omission that pre-dated the parties' contractual relationship" because "the 2010 Completion Agreement released both parties of any claims that pre-dated that agreement." *Id*. at 1335. Accordingly, during the relevant time period, this Court reasoned "where did Siemens's duty of disclosure come from—was it the common law duty to disclose (as required for a fraud claim) or its contractual duty to perform (which would foreclose a fraud claim)? The answer is obviously the latter." *Id*. In short, because Siemens Energy's "duty to share information . . . and to deliver conforming products, arose" from the parties' contracts, not common law, this Court too, found that Secure's fraud claims were barred by the independent tort doctrine. *Id*.

The district court's ruling that the independent tort doctrine applies not only aligns with Secure's allegations and claims, it also is supported by positions Secure advanced during the litigation. Secure argued, for example, that *the parties' contracts* imposed on Siemens Energy an "*ongoing duty to disclose to [Secure] the existence of material defects* in the technology and equipment, including a duty to disclose modifications made" based on the Chinese project. DN-161 at 17 (emphasis added); DN-146 at n.3 ("Siemens had a continuing 'duty to speak' in advising Secure with respect to defects and modifications to the

gasification technology, namely those learned from the Chinese project", citing 2012 LSA); *see* DN-218 at 5 ("Siemens *breached the 2012 [LSA]* by failing to inform[, and making] *statements and omissions*" regarding technology improvements) (emphasis added).  By Secure's own admissions, therefore, the alleged *fraud* – failure to disclose defects – amounted to alleged failure to *contractually* perform, thereby confirming the independent tort doctrine bars Secure's fraud claims.  *See* DN-336 at 14-18.

Further support for the doctrine's application comes from the fact that under Secure's fraud theory, the alleged design defects also depended on, and directly related to, *contractual* performance guarantees in place throughout the parties' relationship.  DN-63 at ¶¶44, 62; DN-149-14 at 110:10-118:25.  For example, Secure confirmed, via its proffered expert, that its defect theories were *measured by* Siemens Energy's contractual performance; Secure's expert *defined* a design defect to be any change to the equipment required to meet contractual performance guarantees.  DN-149-14 at 110:10-118:25.  That the parties' *contract itself* defined "design defect" demonstrates that Secure's fraud claims were contract-dependent and thus barred.  *Id*. at 113:24-114:22, 116:15-117:5. *See Monsoon, Inc. v. BizJet Int'l Sales & Support, Inc.*, No. 16-80722-CIV-MARRA/MATTHEWMAN, 2017 U.S. Dist. LEXIS 26987, at *26 (S.D. Fla.

Feb. 27, 2017) (misrepresentations made before and after contract formation concerning "heart of the parties' agreement . . . cannot [] give rise to an independent cause of action in tort").

By the same token, the parties' contracts included remedies for non-performance, further revealing why the independent tort doctrine applied. That is, Siemens Energy was contractually required to ensure proper gasifier operation, and if defects prevented the gasifiers from passing performance tests, Siemens Energy was required repair, replace, or modify them. DN-149-5 at 18, 27, 31-33, 54, 62, 65-67 [§§1.0 ("Remedy"), 7.5.4, 7.9.3.2] (2010 and 2012 LSAs obligating Siemens Energy to ensure gasifiers meet performance guarantees, pass performance tests, and "[r]emedy the nonconformity," defined as "*correction of* warranty nonconformity or *defect* … by repair, replacement or modification") (emphasis added). The parties' contracts also included liquidated damages and limitation of liability provisions for failures to perform. *Id*. at 34, 40, 68 [§§7.10.2, 14]; DN-149-6 at 5 [§14].

Finally, the damages Secure alleged for fraud – loss in equipment value and spend on its project – are identical to the damages it alleged for its contractual breach of implied warranty claim, further confirming that its fraud theory was not independent of contract. DN-63 ¶¶34, 58. *See E-Professional Techs., LLC*

*v. Primehealth of Ill., Inc.*, No. 8:20-cv-338-SCB-SPF, 2022 U.S. Dist. LEXIS 190530, at *3-4, 14, 22-23 (M.D. Fla. June 15, 2022) (barring fraud claim relating to contractual performance and alleging same damages as contract claim).

In short, wherever one looks, the conclusion is the same: Secure's fraud claims were not based on independent torts, and the district court's grant of summary judgment was proper. *See Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, No. 13-61687-CIV-ROSENBAUM/HUNT, 2014 U.S. Dist. LEXIS 73180, at *11-13 (S.D. Fla. May 29, 2014); *Island Travel,* 300 So. 3d at 1239-40.

### b. Secure's Fraud Claims Also Failed Because Secure Did Not Plead Fraudulent Inducement

Just as it could have stopped its analysis of the implied warranty claim in view of the disclaimer, the district court could have ended its analysis of the fraud claims with the independent tort doctrine, but it did not. The district court also held that Secure's fraud claims failed because Secure did not plead the fraud theory that it urged on summary judgment. DN-339 at n.10, citing DN-338. In its briefing in the district court and now, Secure argues that it pled claims for fraudulent inducement, but its allegations in the operative FAC do not support this argument. *Id*., citing DN-63 at ¶¶72, 42-59. For reasons Siemens Energy argued on summary judgment but Secure did not address in its opposition to Siemens Energy's renewed motion or in its Brief on appeal, this fraud theory

does not withstand analysis.  DN-336 at 18-21; DN-338 at 4-8. For starters,
Secure did not plead with particularity any misrepresentations in its FAC.
Instead, it pled that it entered the 2012 LSA in "detrimental[] rel[iance]" on an
alleged "misrepresentation by omission." DN-63 at ¶54-56, 72-74, 77.  But the
*only* "misrepresentation by omission" Secure pled with the requisite particularity
under Federal Rule of Civil Procedure 9(b) allegedly occurred at an October 2012
meeting, when Siemens Energy did not disclose the purported "design defects."
*Id*. at ¶¶49-50, 67-68.  At that meeting, Siemens Energy responded to a question
from Secure's potential vendor, SK, as follows:

> SK (Igor Ribakovs) asked if Siemens will incorporate lessons learned from their
> Chinese gasifiers.  Siemens (Rolf Rüsseler) stated that these design improvements will
> be included in the MidAmerica C2L design, subject to Midamerica C2L paying for the
> re-engineering (item 5).

DN-149-16 at 4; DN-149-9 at 363:15-365:15.

But the October 2012 meeting took place three months *after* the parties
signed the 2012 LSA.  DN-63 ¶¶54, 68.  Nothing at that meeting could logically
induce an agreement that had already been entered into months before.  No other
allegations in Secure's FAC have the requisite specificity under Rule 9(b) and
the time to amend is long over and done with.[11]  DN-338 at 4-5, 8; *Ziemba v.*

---

[11] Secure also did not allege with particularity that it was "induced" to take any
action other than enter the 2012 LSA. DN-63 ¶¶56, 74; DN-336 at n.13; DN-337

*Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (analyzing Rule 9(b) and rejecting fraud theories not pled with particularity).

Not only is the alleged omission inconsequential as a matter of fact, it is inconsequential as a matter of law as well. The alleged omission was made in the context of Siemens Energy's promise of future action – i.e., to incorporate lessons learned – at the October 2012 meeting. DN-149-16 at 4; DN-149-9 at 364:16-365:15. A promise of future action, however, cannot support a fraud claim, which is an additional reason why summary judgment for failure to plead purported fraud was appropriate. *Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, No. 8:10-cv-2873-T-23EAJ, 2012 U.S. Dist. LEXIS 114250, at *13-14 (M.D. Fla. Aug. 14, 2012) ("neither an opinion nor a promise of future action (or an omission about a future event) supports a claim of fraud"); *see Thompkins v. Lil' Joe Records, Inc.* 476 F.3d 1294, 1316 (11th Cir. 2007) ("Under Florida law, a fraud claim cannot be premised on a promise to do something in the future . . . ." (citations omitted)).

---

at 13-14. Secure's purported project investments occurred *before* the October 2012 meeting (and before the 2012 LSA) and thus could not possibly have been "induced" by the alleged omission, which had not yet occurred. DN-149-22 at 8 [RFA No. 21]; *see* DN-207 at 8-9 (invoices pre-dated 2012 LSA except a few, which were for vendors retained pre-2012 LSA); DN-149-2 at 468:8-469:21; *see* DN-169-2 at 14-18; PPX 144-48; DN 207-1 (PTX 183 and 184).

### c. Secure's Fraud Claims Were Properly Dismissed Because Secure Did Not Prove the Inadequacy of Legal Remedies or Alleged Damages

Secure's fraud claims also failed for multiple additional reasons that it cannot contradict. Regarding Count V for rescission-fraud, Secure sought rescission of the 2012 LSA. DN-63 at ¶79. But, as the district court found, "Secure does not argue, much less demonstrate, that legal remedies are inadequate."[12] DN-339 at 14, citing *Sokolow v. Damico*, No. 19-CV-80278-REINHART, 2019 U.S. Dist. LEXIS 220849, at *14 (S.D. Fla. Dec. 26, 2019). In fact, in its operative FAC, Secure had claimed *damages* for the *same* alleged fraud—thereby conceding that a damages remedy *would be adequate*. DN-63 at ¶¶42-59. Notably, those damages were also the *same* damages Secure claimed for its *contractual* breach of warranty claim. *Id*. at ¶¶34, 58-59. From any perspective, therefore, Secure could not colorably demonstrate that legal

---

[12] To be clear, Secure had tried to argue that legal remedies were inadequate because it was storing and could not return large equipment. DN-337 at 15. But the district court's statement was the correct one because those assertions had nothing to do with any rescission remedy involving the 2012 LSA. Secure did not purchase the equipment under the 2012 LSA; it purchased the equipment under the 2007 ESA. If the 2012 LSA was rescinded, that would not return the status quo to as it existed before 2007 ESA because, among other things, the 2007 ESA and the 2010 LSA – with their warranty disclaimers, agreed legal remedy provisions, and required license fee payments – were in between. DN-338 at 8-9; *see Royal v. Parado,* 462 So. 2d 849 (Fla. Dist. Ct. App. 1985).

remedies for the fraud it alleged were inadequate. *See Sokolow,* 2019 U.S. Dist. LEXIS 220849, at *17 (granting summary judgment on rescission claim where breach of contract/damages claim demonstrated adequacy of legal remedy "which independently precludes rescission.").

Finally, Secure faced another roadblock because its purported fraud damages, as noted above, are the same purported damages that Secure alleged for its breach of implied warranty claim. DN-63 at ¶¶34, 58-59. Damages, including damages causation, of course, are an essential element of a fraud-damages claim. *Casey v. Welch*, 50 So. 2d 124, 124-25 (Fla. 1951) (per curiam) (reversing fraud finding; plaintiff could not prove damage and record was "devoid of evidence that plaintiff was injured" by alleged misrepresentations)*; Caledonian Bank & Tr. Ltd. v. Fifth Third Bank*, No. 8:13-cv-1470-T-36TGW, 2015 U.S. Dist. LEXIS 125059, at *9 (M.D. Fla. Sep. 18, 2015) ("'Without proof of actual damage the fraud is not actionable'"), quoting *Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc.*, 955 So.2d 1124, 1132 (Fla. 4th DCA 2007). But as the record reflects, Secure failed to prove alleged damages arising from alleged breach of warranty and the failure supports dismissal of its fraud-damages claim – Count IV – as well. *See* DN-339 at n.9; DN-336 at 23-25; DN-338 at 11.

#### d. Secure's Fraud Claims Were Properly Dismissed Because It Did Not Prove a Duty to Disclose

As noted, the district court reached the correct result regarding Secure's fraud claims for an additional reason its order does not directly address: Secure failed to offer evidence of another essential element of alleged fraud, specifically a common law "'duty to disclose.'" *Sokolow*, 2019 U.S. Dist. LEXIS 220849, at *9-10 ("'A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose'" (quoting *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. Dist. Ct. App. 2000))). A duty to disclose arises only "when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id*. (citation and internal quotations omitted).

Here, the parties' relationship was neither confidential, nor one of trust, nor one in which Siemens Energy owed fiduciary duties to Secure. Rather, Siemens Energy's duties to Secure were laid out in *commercial contracts* and the parties managed their relationship at every step, negotiating new agreements to close out old ones and executing new fully integrated licenses in response to Secure's shifting plans. DN-149-22 at 5-7 [RFA Nos. 10-15, 17-20]. Secure's principal also agreed he was a sophisticated businessperson with extensive experience negotiating commercial contracts, and throughout the parties'

relationship, Secure also had its own attorney and consultants. *Id*. at 6 [RFA No. 14]; DN-149-2 at 173:17-179:22; DN-149-14 at 168:11-173:18, 175:15-176:22, 180:3-25.

Against this backdrop, Secure presented no evidence that the parties engaged in anything other than "arms-length transaction[s] between equals, not a relationship of trust and confidence." *Sokolow,* 2019 U.S. Dist. LEXIS 220849, at *9-12. Thus, "the alleged material omissions cannot support a fraudulent inducement claim" because Secure made no showing of a duty to disclose. *Id*. (summary judgment on fraud claim granted where plaintiff failed to present evidence of a fiduciary, confidential, or trust relationship at time of contracting).

Just as with breach of warranty, there are multiple independent and equally dispositive reasons for dismissing Secure's fraud claims, whether damages or rescission is sought. Those reasons extend to the inability to pursue such a remedy on the allegations it made, and to the failure to establish such a claim on the record it offered. Affirmance is called for in this instance as well.

### 3. The District Court Properly Granted Summary Judgment on Count VI for Rescission-Failure of Consideration

The district court correctly granted summary judgment on Secure's claim for rescission based on alleged failure of consideration as alleged in Count VI because Florida law does not recognize such a claim. DN-339 at 14, citing *Webb v. Kirkland*, 899 So. 2d 344, 346 (Fla. Dist. Ct. App. 2005) ("With respect to recission, a court of equity will ordinarily rescind or cancel an instrument only for fraud, accident or mistake and not because of the mere want or failure of consideration." (internal quotation marks omitted) (quoting *Rennolds v. Rennolds*, 312 So. 2d 538, 541 (Fla. Dist. Ct. App. 1975)). The district court applied Florida law because it had done so in its previous summary judgment ruling and neither party had challenged that choice of law on appeal. *Id*. The court's reliance on Florida law also aligns with this Court's holding in the prior appeal that Florida law controlled on this count. *See MidAmerica I*, 25 F.4th at 1329-1330 (waiver analysis concluding Florida law controls), 1333 (after discussing contract claims, stating: "As discussed earlier, we apply Florida law to the remainder of Secure's claims"), 1335 (applying Florida law to Count VI); *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *32-33 (same waiver analysis).

As with Count V, the district court likewise found that Secure failed to establish that its legal remedies were inadequate for the alleged failure of consideration and Secure could not do so on the record. DN-339 at 14. In particular, the court noted that Secure could not make that showing because "the 2007, 2010, and 2012 agreements provide for agreed legal remedies for defects and breaches," and "where there is a failure of consideration, 'an action for damages at law is usually considered adequate.'" *Id*. (citing *Webb*, 899 So. 2d at 346 (quoting *Royal*, 462 So. 2d at 855)).

The district court also determined that the claim in Count VI was "barred through the statute of limitations, whether one applies Florida or New York law." *Id.* at 15. The statute of limitations under Florida law is four years for an action to rescind a contract, and under New York law, it is six years. Fla. Stat. §95.11(3)(k); *Rubin v. Rubin*, 275 A.D.2d 404, 405 (N.Y. App. Div. 2000); N.Y. C.P.L.R. 213[1]. Secure filed its case in July 2016—more than *eight* years after executing the contract at the heart of its claim (the 2007 ESA). Secure did not address or challenge this dispositive argument on summary judgment or in its opening brief on appeal. It cannot make a contrary argument for the first time in reply. *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) (per curiam).

Lastly, the court's dismissal of Count VI also is justified because in the 2010 Completion Agreement, the parties terminated and waived all claims under the 2007 ESA, the foundational contract that purportedly supports this claim. DN-149-2 at 281:7-286:10; DN-149-4 at 73-82. Secure's contract termination and express waiver of liability applies.

## B. Secure's Assertions of Reversible Error Are Meritless

Secure's opening brief reads as though the district court acted precipitously in rejecting its warranty, fraud, and rescission claims without giving it its day in court. But Secure had its day in court and more, and it comes by its assertions of prejudice only by ignoring, miscasting, or failing to come to grips with the record, law or reasoning that underlies the district court's ruling. As one might readily surmise from the many independent bases supporting each ruling the district court made, none of Secure's arguments withstands reasoned analysis.

### 1. There Was No Error in Granting Summary Judgment on Secure's Breach of Implied Warranty Claim

Secure admits that it agreed to an express disclaimer of implied warranties in three consecutive contracts, and that it did not plead unconscionability, yet it nevertheless argues that its breach of implied warranty claim should have survived summary judgment. For reasons noted above, the record and controlling law put this baseless assertion to rest.

Secure initially argues that it did not need to plead unconscionability because it was a "rebuttal" to Siemens Energy's waiver affirmative defense. Brief at 28. But Secure did not make this argument below and it is waived for purposes of appeal. *Cita Tr. Co. AG v. Fifth Third Bank,* 879 F.3d 1151, 1156 (11th Cir. 2018) ("issue[s] not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt" (citation omitted)); *Crenshaw v. Lister*, 556 F.3d 1283, 1291 n.3 (11th Cir. 2009) (per curiam) ("arguments not raised in response to a summary judgment motion are waived for purposes of appeal" (citation omitted)). Beyond that, as shown above, Secure was obligated to plead unconscionability facts and it did not and could not.

In its rejoinder, Secure relies on a case under *Florida* law, holding that a plaintiff did not need to plead *estoppel* to avoid an affirmative defense. *Caruso v. Golden Rule Ins. Co.*, No. 13-60405-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS 147377, at *12 (S.D. Fla. Oct. 11, 2013). But here, *New York* law applies and requires litigants asserting *unconscionability* to "have pleaded facts supporting both procedural and substantive unconscionability." *Accurate Copy Serv.* , 72 A.D.3d at 457. Where litigants "fail to plead anything regarding an alleged lack of meaningful choice", they fail to claim unconscionability and dismissal is proper. *Id*.; *see* N.Y. U.C.C. Law §2-302(2) ("[w]hen

[unconscionability] is *claimed*," parties may present evidence to aid court in making determination (emphasis added)).[13] And contrary to Secure's assertion, demonstrating unconscionability was necessary for Secure to prevail; it was not merely a response to an affirmative defense.

With much hyperbole but no support, Secure next argues that a jury could find that it was "forced" and "under enormous pressure" to sign the 2012 LSA. Brief at 29. But this is just empty rhetoric. Secure points to a third-party affidavit that the district court correctly noted "does not support Secure's unconscionability theory." DN-339 at 10, citing DN-221-2. It also points to three additional exhibits that it asserts, for the first time on appeal, support unconscionability – two cryptic deposition excerpts and one declaration from Secure's principals referring to Secure's gasifier purchase in 2007 and later interactions with potential contractor, SK, and Siemens Energy. None of these

---

[13] Secure also confusingly relies on *Frazee, Inc. v. Reedy Creek Hosp., LLC*, in which the court denied motions to strike because they addressed moot affirmative defenses that had been replaced by amended affirmative defenses. No. 6:12-cv-1194-Orl-28GJK, 2013 U.S. Dist. LEXIS 49020, at *7 (M.D. Fla. Apr. 4, 2013). The court in *Frazee* recognized that amended affirmative defenses still could be challenged on summary judgment. If anything, this case supports Siemens Energy's position. Here, as the district court held, its early ruling on unconscionability was rendered moot after Secure filed its FAC. Siemens Energy then properly challenged Secure's unconscionability arguments on summary judgment.

exhibits establish reversible error because (i) they were never presented as evidence of purported unconscionability in the district court; (ii) they do not evidence any purported procedural or substantive unconscionability at the time the 2012 LSA was entered (or ever); and (iii) Secure does not, and cannot, explain how they advance its position at all. Brief at 29 (citing DN-337-4 at 11-13, 21; DN-337-2 at 6, 11; DN-221-7). In this instance, unconscionability is an issue for the court to decide, and the undisputed evidence establishes *Secure* – not Siemens Energy – was the impetus for both the 2010 and 2012 contracts because it needed a new license agreement to extend payment deadlines, restructure license terms, and/or change geographic restrictions. Secure admitted as much in responses to requests for admission.[14] DN-149-22 at 5, 7; *see* DN-149-4 at 73; DN-149-7 at 63–65; DN-149-5 at 11.

The 2012 LSA warranty disclaimer also is the *same one* which Secure had agreed to *twice* before – in the 2010 LSA and 2007 ESA – simply carried forward.

---

[14] Secure's principal also conceded that Secure considered it a "major accomplishment" to obtain Siemens Energy's agreement to extend performance guarantees and payment deadlines (later memorialized in the 2012 LSA). DN-149-2 at 379:19-380:15; *see also* DN-149-5 at 5 (Secure's financial statement explaining that 2012 LSA was to extend guarantees and payment deadlines). The contracts themselves confirm their principal differences relate to payment deadline and license extensions to accommodate Secure's evolving plans.

So it was neither new nor "forced" upon Secure in 2012. *Compare* DN-149-5 at 34 & 68 *with* DN-149-3 at 28. Secure also had advice from legal counsel and a technical advisor in negotiating the agreements that, through multiple extensions, sought to accommodate its changing plans and inability to pay agreed license fees. DN-149-22 at 5-7; DN-337 at 20. Secure's assertions of coercion as related to the 2012 LSA cannot be credited because the record refutes them.

Secure also argues that the court "committed reversible error by weighing evidence." Brief at 29. But, as noted above, there was nothing to weigh. Unconscionability was properly decided on summary judgment because, as the district court noted, Secure did not plead unconscionability and offered no evidence supporting it. DN-339 at 6-11. Here, summary judgment was called for because "the significant facts germane to the unconscionability issue [were] essentially undisputed." *Simar*, 87 A.D.3d at 690 (quoting *Scott v Palermo*, 233 A.D.2d 869, 870 (N.Y. App. Div. 1996) (on summary judgment, conspicuous provision not unconscionable; party had commercial experience and meaningful choice)); *Cayuga Harvester*, 95 A.D.2d at 20-21 (stating unconscionability is rare in commercial transactions; finding none where plaintiff had notice of provision, provider choices, and contractual agreement for repair/replacement of defective parts); *Ng*, 2011 U.S. Dist. LEXIS 88549, at *24 (conclusory allegations of

"'high pressure'" tactics and unequal bargaining power insufficient to defeat summary judgment).

## 2. There Was No Error in Granting Summary Judgment on Secure's Fraud Claims

Secure offers multiple reasons that its Counts IV and V fraud claims should have survived summary judgment based on facts it never pled and cannot plead now as well as legal arguments that contravene the record and applicable law. There is nothing further to litigate on these counts either.

### a. Secure Did Not Plead Fraudulent Inducement; Regardless, the Independent Tort Doctrine Precludes its Fraud Claims.

Secure initially asserts that the district court erred in determining Secure "fail[ed] to plead fraudulent inducement" and that the independent tort doctrine "does not bar fraudulent inducement claims." Brief at 24. The district court dismissed this argument in a footnote, correctly observing that Secure did not plead fraudulent inducement in its operative FAC. DN 339 at n.10. Indeed, as noted above, the only allegation in the FAC that meets Rule 9(b)'s requirement of specifically stating *when*, *where* and *by whom* the alleged fraud occurred, alleges Mr. Russeler of Siemens Energy fraudulently omitted information in *October 2012* at a meeting with Secure's potential contractor, SK. DN-63 at ¶¶50, 68. That alleged omission occurred three months *after* execution of the

July 2012 LSA and it *cannot* possibly have induced the contract. That omission also was a promise of future action which fails to support a fraud claim.

With no answer for either of these analyses,[15] Secure ignored them and tried on summary judgment and again on appeal, to *re-write* its claims based on inadmissible **unpled** purported misrepresentations and omissions, none of which can defeat summary judgment.[16] DN-338 at 4-8; DN-337 at 6-7, 14, 17; Brief at 13, 15-17, 22, 27-28. As noted above, in multiple rulings, the district court held

---

[15] Secure cannot raise new arguments on appeal that it failed to raise in opposition to Siemens Energy's renewed summary judgment motion. *Cita Tr. Co. AG,* 879 F.3d at 1156; *Crenshaw*, 556 F.3d at 1291 n.3 (11th Cir. 2009) (per curiam); *see Sapuppo v. Allstate Floridian Ins. Co.,* 739 F.3d 678, 681 (11th Cir. 2014) ("an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority").

[16] For example, Secure asserts facts that it *did not plead*, such as that Siemens Energy (1) misrepresented its "'20 years of proven' operating experience", (2) represented that NCPP operations were "operating ahead of schedule and exceeding expectations" while omitting alleged facts; and (3) "fabricated information about" gasifiers. *See* DN-337 at 7-8, 14; Brief at 13, 15-17, 27; DN-63; *see* DN-338 at n.3. Nor did Secure plead facts regarding the March 5, 2012 presentation to which it cites. DN-337 at 8, 14, 20 *and* Brief at 17, 28, citing DN-146-19. That presentation, moreover, was directed *to SK*; Secure was not invited to the meeting, did not have the presentation, and could not possibly have relied on it. DN-164-13 at 7-8, 64-68 [¶15, Exs. 11-12]. Siemens Energy objected to the numerous unpled accusations and unsupported statements in Secure's opposition brief and the district court knew the record from its long association with the litigation. A point-by-point rebuttal appears at DN-163 at 5-18 and DN-230 at 8-11. Although not needed to affirm summary judgment, Siemens Energy also objects to Secure's reliance on irrelevant, unreliable NCPP-related evidence to prove alleged defects. DN-338 at n.3.

that Secure would not be permitted to amend its claims to add new allegations or fraud theories. This Court affirmed those discretionary rulings in its first and second decisions and did so unequivocally. *See MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *42-47. Although unacknowledged by Secure, the Court's ruling is final and the last word on the issue. Secure's argument in this respect borders on the disingenuous.

As for Secure's assertion that the independent tort doctrine does not bar fraudulent inducement claims, Secure is wrong there too. Secure's authority, *HTP, Ltd. v. Lineas Aereas Costarricenses*, 685 So. 2d 1238, 1239 (Fla. 1996), manifestly does not establish a *per se* rule that *all* fraudulent inducement claims are independent torts. *Hotels of Key Largo v. Rhi Hotels,* 694 So. 2d 74, 76-77 (Fla. Dist. Ct. App. 1997) (analyzing *HTP*, stating "simply applying the label of 'fraudulent inducement' to a cause of action will not suffice to subvert the sound policy rationales underlying the economic loss doctrine"); *Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F. Supp. 2d 843, 852 (D. Minn. 1998) ("Florida courts have not adopted a *per se* rule regarding whether the economic loss rule applies

to claims of fraudulent inducement; rather, such a determination depends on the specifics of each case").[17]

Instead, *HTP*, and cases decided after it, including Eleventh Circuit cases, recognize fraudulent inducement claims are barred where, as here, the alleged fraud is interwoven with contractual duties and performance breaches. An unbroken line of authority so provides. *See HTP*, 685 So. 2d at 1239-40, citing *Huron Tool and Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365 (Mich. Ct. App. 1995); *Hotels,* 694 So. 2d at 76-77 (fraudulent inducement claims not independent and are barred because "alleged misrepresentation concerns the heart of the parties' agreement"); *Thompkins*, 476 F.3d at 1316 (citing *Hotels,* 694 So.2d at 78) (inducement claim fails; plaintiff "complains about nothing more than that [defendants] did not fulfill their promises under the contract – exactly the basis for a breach of contract claim"); *HTC Leleu Family Tr. v. Piper Aircraft, Inc.*, No. 1:12-cv-21118-KMM, 2012 U.S. Dist. LEXIS 149498, at *12 (S.D. Fla. Oct. 17, 2012) (same; fraud allegations related to whether defendant "breached the agreement by providing a defective Aircraft");

---

[17] The economic loss doctrine is related to the independent tort doctrine, which is applied outside the products liability context. *Regan v. Bank of Am., N.A.*, 2023 U.S. Dist. LEXIS 173505, at *19 (S.D. Fla. Sept. 27, 2023).

*Island Travel*, 300 So. 3d at 1239 ("[t]he only properly alleged misrepresentation simply has to do with [the plaintiff's] failure to perform"); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1222-23 (11th Cir. 2018) (inducement theory barred where "'interwoven and indistinct from the heart of the contractual agreement'" (quoting *Thompkins*, 476 F.3d at 1316)).

### b. Secure's Fraud Claims are not "Separate and Distinct" From a Breach of Contract Claim

Secure's second argument—that its fraud claims are "separate and distinct from a breach of contract"—fares no better. Brief at 26. While Secure notes that its Count I for breach of contract based on repudiation is not commensurate with its fraud claims, Secure ignores that its breach of warranty contract claim *is* essentially a restatement of its fraud claims. Moreover, a party need not actually plead a similar contract claim for the independent tort doctrine to apply. As set forth above, the question is whether the tort allegations are interwoven with contractual duties to perform. *Thompkins*, 476 F.3d at 1316. There is plainly such interweaving here.

### c. Secure Failed to Show a Common Law Duty to Disclose

Secure additionally asserts that the court "erred in finding that Secure's fraud claims arise from contractual duties" and argues there "is no extra 'duty' requirement" to prove for its fraud claims because misrepresentations and

omissions are closely related.  Brief at 27.  But, as set forth above, Secure's fraud claims are essentially commensurate with a breach of contract claim, and they arise from Siemens Energy's alleged breaches of its contractual duties to supply conforming equipment and share information.  DN-339 at 11-14.

As for Secure's argument that it need not establish a duty to disclose, its authority does not address, much less eliminate, the requirement that "[a] defendant's knowing concealment or non-disclosure of a material fact ***may only support an action for fraud where there is a duty to disclose***."[18]  *Sokolow,* 2019 U.S. Dist. LEXIS 220849, at *9-10 (emphasis added) (citation and internal quotations omitted).  Moreover, Secure is limited to the fraud allegations and theories it pled with particularity in the FAC, as this Court conclusively held when it affirmed denial of Secure's late and unsupported motions for leave to amend its pleadings to allege the same unpled fraud theories and allegations that Secure improperly tries to revive here.  *MidAmerica II*, 2023 U.S. App. LEXIS

---

18 Secure's authority, *Woods v. On Baldwin Pond, LLC,* 634 F. App'x 296, 297 (11th Cir. 2015) (per curiam), found that the defendant pled inducement based on omissions and explained that there's no "stark distinction" between misrepresentations and omissions, but it did not address, or do away with, the requirement that plaintiffs must establish a duty to disclose for fraud by omission claims.  *Id.* at 298.

7690, at *42-47.  Although again unacknowledged by Secure, this Court's prior decision is the last word on this issue as well.

### d. Secure Cannot Show Legal Remedies are Inadequate.

Finally, Secure's argument that its legal remedies are inadequate "because of the substantial and unique nature of the equipment procured under fraudulent pretenses" is just one more piece of misdirection.  Brief at 30.  To start, Secure does not plead fraudulent inducement – of the 2012 LSA or any other of the parties' contracts.  In addition, its fraud-rescission claim only purports to relate to the 2012 LSA; by its terms, it does not involve any allegations of alleged fraud that occurred *before* March 2010.  And nowhere in the FAC does Secure allege that its equipment was "procured under fraudulent pretenses" or that Siemens Energy induced "multiple contracts" via "a systematic campaign of misrepresentation and concealment regarding the performance of its gasification technology."  Brief at 30-31; DN-63.  These are more of Secure's unpled and improper allegations and theories that have been conclusively rejected and cannot serve to reverse summary judgment.

Beyond that, Secure's possession of large and "unique" equipment has nothing to do with any rescission remedy under Secure's fraud claim because Count V seeks rescission only *of the 2012 LSA*.  Brief at 30. Secure did not

purchase the equipment under the 2012 LSA; it purchased the equipment *under the 2007 ESA*, which the parties terminated and under which Secure waived all claims against Siemens Energy. DN-149-4 at 73-82. By the same token, Secure's claim for rescission of the 2007 ESA (Count VI) does *not* allege fraud or inducement; it alleged failure of consideration and suffers from several fatal infirmities of its own, as set forth above.

### 3. There Was No Error in Granting Summary Judgment on Secure's Rescission-Failure of Consideration Claim

Secure asserts the district court erred in granting summary judgment of Count VI but the record and controlling law again expose the fallacies in Secure's positions.

First, Secure's argument for reversal is based on inapplicable New York law. Brief at 29-30. Whereas New York law recognizes a claim for rescission based on failure of consideration, Florida law does not. And Florida law applies here for reasons that are undisputed, undisputable, and conspicuously ignored by Secure.

When Siemens Energy made its initial motion for summary judgment, the district court resolved a choice of law dispute by applying Florida law to this Count. DN-203 at 6-9; DN-339 at 14. On the ensuing appeal, Secure did not argue for the application of New York law to the claim. In fact, Secure did not

make any kind of choice of law argument on appeal and this Court held it had waived the issue and went on to apply Florida law to this Count in its original opinion – rejecting Secure's rescission for failure of consideration claim because Florida law does not recognize it. *MidAmerica I*, 25 F4th at 1329-30, 1333, 1335. In its second opinion, this Court again found Secure's same waiver, reaffirming the applicability of Florida law, which is law of the case. *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *32-34; DN-339 at 14; *SEC v. Imperiali, Inc*., No. 20-13308, 2021 U.S. App. LEXIS 28610, at *2-4 (11th Cir. Sept. 21, 2021) (per curiam).

Given this record, two things are clear: (i) Secure has irrevocably waived any attempted application of New York law to Count VI; and (ii) there is no conceivable error in the district court's application of Florida law on summary judgment for reasons this Court already provided.[19]  Count VI was and is subject to dismissal and Secure has no response on that resolution.

---

[19] Secure's baseless argument, in a footnote (Brief at n. 6), that Count VI (which seeks to *avoid* a contract) is a contract claim to which New York law applies ignores its waiver as well as this Court's and the district court's waiver analyses and misconstrues this Court's opinion in the prior appeal. DN-339 at 14; *see* DN-338 at 9-10; *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *32-34; *MidAmerica I*, 25 F4th at 1329-30, 1333, 1335.

Second, and independently, on renewed summary judgment and again on appeal, Secure did not address or refute the position that Count VI is time-barred. DN-338 at 10-11; *see* Brief at 31-32; DN-149 at 23; DN-166 at 10. Secure thus waived any challenge to the district court's ruling that Count VI is time-barred, and that ruling provides an independent and fully sufficient basis for this Court to affirm. *Sapuppo,* 739 F.3d at 680-81 ("[w]hen an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed"); *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (issue not properly before appellate court where plaintiffs failed to raise it before the district court (citation omitted)).[20]

Third, Secure's argument that the district court erred in finding it failed to show legal remedies were inadequate does not survive scrutiny either. Secure argues for recission of the 2007 ESA and subsequent agreements based on purportedly "false representations regarding functionality and proven performance." Brief at 32. But Secure did not plead these fraud allegations for this or *any of its other claims in the FAC*. Further the purported (but unpled)

---

[20] Any attempt by Secure to address this issue for the first time in reply should not be considered. *Levy*, 379 F.3d at 1244.

misrepresentations have nothing to do with a failure of consideration and do not answer any question relevant to the adequacy of legal remedies either.

The same goes for Secure's novel theory that consideration "failed", and thus rescission is necessary, because of Siemens Energy's "substantial and fundamental" "breaches" of the 2007 agreements. Once again, Secure did not plead breach of the 2007 (or 2010) agreement (*see* DN 204 (no other breach theories are to be advanced)). Apart from that this Court and the district court acknowledged that Secure could not assert claims based on the 2007 agreement because the parties *terminated*, and Secure *released and waived all claims* under, the 2007 contracts in the 2010 Completion Agreement. *See* DN-339 at n.3; DN-336 at n.7; *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *7-8; *MidAmerica I*, 24 F.4th at 1321, 1335; DN-149-4 at 74; DN-149-2 at 281-286:1; DN-146 at 5, 27.[21]

In sum, Secure's various arguments for reversal are a continuation of its obstinate refusal to acknowledge the record in these proceedings, the allegations

---

[21] Secure's out-of-left-field assertion that Siemens Energy exited the gasification business because "its equipment was defective" (Brief at 32) is unsupported and the record refutes it. As this Court previously determined, Siemens Energy decided to exit the market due to "market constraints" while continuing to support its customers, including Secure. *MidAmerica II*, 2023 U.S. App. LEXIS 7690, at *13-14, 42.

it made and is bound by, and the decisions from the district court and this Court, all of which expose the lack of merit in what it argues to this Court now. There is no basis for reversal here because Secure has no case now and did not have one before. This Court should affirm and so hold.

## CONCLUSION

For the above reasons, the Judgment should be affirmed.

DATED this the 15th day of July, 2024.

/s/ James C. Martin
_____
James C. Martin
Jonah D. Mitchell
Adaline J. Hilgard
Christopher J. Pulido
REED SMITH LLP

*Counsel for Appellee Siemens Energy, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this Appellee Siemens Energy, Inc.'s Responding Brief complies with the type-volume limitation of Federal Circuit Rule 32(a) and contains 12,988 words.

The response has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

DATED this the 15th day of July, 2024.

/s/ *James C. Martin*
James C. Martin
Jonah D. Mitchell
Adaline J. Hilgard
Christopher J. Pulido
REED SMITH LLP

*Counsel for Appellee Siemens Energy, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 15th Day of July 2024, a true and accurate copy of the foregoing **APPELLEE SIEMENS ENERGY, INC.'S RESPONDING BRIEF** was filed electronically with the Clerk of the Court via the CM/ECF system, which will cause service upon all counsel of record, including the following:

Anthony G. Simon
Jeremiah W. Nixon
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101

*/s/ James C. Martin*
James C. Martin
*Counsel for Appellee*
*Siemens Energy, Inc.*
